## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **KEITH BONEY,** by and through his parent / guardian, Wendy Boney, individually and on behalf of a class, | ) ) ) ) | |
| Plaintiff, | ) ) | No. |
| vs. | ) ) ) ) | FILED STAMP: JULY 16, 2008<br>08CV4026<br>JUDGE NORGLE<br>MAG. JUDGE VALDEZ<br>J. N. |
| **BARRY S. MARAM**, in his official capacity as Director of the Illinois Department of Healthcare and Family Services, **CAROL L. ADAMS,** in her official capacity as Secretary of the Illinois Department of Human Services, **LILIA TENINTY,** in her official capacity as Director of the Office of Developmental Disabilities, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

Now comes the Plaintiff, by and through his attorney, Robert H. Farley, Jr., Ltd., and files

the following complaint against the Defendants as follows:

### I.  INTRODUCTION

1.  Plaintiff brings this action against Defendants, who administers Illinois Medicaid

Assistance program, to enjoin the policy and practice of denying or failing to make available

funding for intensive nursing care or access to 24 hour nursing care to persons with

developmental disabilities over the age of 21 years or when they age out of the "childrens

program" and are funded in the "adults program" solely because they are living in the

1

community, even when such nursing services are medically necessary for them.  This policy and

practice violates Title XIX of the Social Security Act (which governs Medical Assistance or

Medicaid) 42 U.S.C. Sec. 1396-1396v and 42 U.S.C. Sec. 1983, Title II of the American with

Disabilities Act, 42 U.S.C. Sec. 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. Sec.

794(a).

2.  (a)  The named Plaintiff, Keith Boney is non-ambulatory, wheel chair dependent,

developmentally disabled adult who is medically fragile and who needs funding for intensive

nursing care services or access to 24 hour nursing services.   The Plaintiff participates in the

Illinois Medicaid Home and Community-Based Services ("HCBS") waiver program, which is

authorized by federal law to permit developmentally disabled persons to receive home and

community based services to avoid institutionalization.  The Plaintiff has been denied funding for

intensive nursing care services or access to 24 hour nursing care, not because he has no medical

need for such services, but because he is over 21 years of age and has aged out of the "childrens

program" and is now in the "adults program" and is living in the community and is not living in

an institution.

(b) The named Plaintiff, Keith Boney is one of 13 developmentally disabled persons

who have intense medical needs and requires access to 24 hour nursing care in their group

homes.  In 1996, at the request of the State of Illinois, St. Coletta's of Illinois, a non-profit

organization, founded by the Sisters of St. Francis of Assisi, agreed to provide residential and

intensive nursing care services to a group of 20 developmentally disabled children, which

included the Plaintiff, Keith Boney.  As this group of 20 aged out of the State of Illinois

"childrens program" into the State's "adults program" for the developmentally disabled, the State

2

of Illinois refused to provide funding to the Plaintiff and other similarly situated disabled persons for access to 24 hour nursing services to these fragile persons in this "adults program" even though the State had previously provided funding for nursing services when they were in the "childrens program."

(c)  The Defendants' will only provide funding to the Plaintiff, Keith Boney and his roommates for access to 24 nursing care, if they move out of their community based group home and move into an institution.

3.  (a)  Prior to the Plaintiff turning 21 years of age or aging out of the "childrens program," the Defendants provided funding for the Plaintiff to receive to receive intensive nursing care services or access to 24 hour nursing services because it was medically necessary.

(b)  The Defendants' practice and policy is to provide funding for developmentally disabled persons under the age of 21 years or while they are enrolled in the "childrens program" for intensive nursing care services or access to 24 hour nursing services, when medically necessary.

(c)  The Defendants practice and policy is <u>not</u> to provide funding for developmentally disabled persons over the age of 21 years or when they age out of the "childrens program" into the "adults program"  to receive intensive nursing care services or access to 24 hour nursing services when medically necessary if they are living in the community.

(d)  The Defendants practice and policy is to provide funding for developmentally disabled persons over the age of 21 years or when they are in the "adults program" to receive intensive nursing care services or access to 24 hour nursing services when medically necessary, only if they are living in an institution and not in the community.

3

4. The named Plaintiff is not alone. His predicament is shared by many other developmentally disabled persons over the age of 21 years and who have aged out of the "childrens program" into the "adults program" and who are in medical need of funding for intensive nursing care services or access to 24 hour nursing services, when living in the community. The Plaintiff resides in community based group home operated by St. Coletta's of Illinois, commonly known as a Community-Integrated Living Arrangement (CILA), with 7 other developmentally disabled persons over the age of 21 years who are all non-ambulatory and who have a medical need for funding for intensive nursing care services or access to 24 hour nursing services. St. Coletta's of Illinois, operates a second community based group home for developmentally disabled persons over the age of 21 years who are all non-ambulatory and who have a medical need for funding for intensive nursing care services or access to 24 hour nursing services. This second home currently serves 6 persons with a capacity to serve 8 persons. The Defendants fail to provide funding to these 13 developmentally disabled adults (including the Plaintiff) who are in medical need of funding for intensive nursing care services or access to 24 hour nursing services provided by St. Coletta's of Illinois, because they are living in the community instead of an institution.

## II.  JURISDICTION & VENUE

5. This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. Sections 1331 and 1343. Plaintiff's claim for declaratory and injunctive relief are authorized under 28 U.S.C. Sec. 2201-02 and 42 U.S.C. Sec. 1983.

6. Venue is proper in the Northern District of Illinois under 28 U.S.C. Sec. 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims arose there.

4

### III.  PARTIES

7.  Plaintiff, Keith Boney is a 30 year old developmentally disabled person.  He is severely mentally retarded.  He is non ambulatory, wheel chair dependent.  He has cerebral palsy with deformity of both feet.  He has chronic asthma and is at risk for respiratory infections.  He is monitored for asthma symptom and receives routine nebulizer treatments.  He has severe spastic quadriplegia and requires assistance with all his daily living activities.  He is on a mechanical diet with chopped food.  Due to the Plaintiff's complex medical issues and diagnoses and his respiratory issues, he requires intensive nursing care services or access to 24 hour nursing care.

8.  The Defendant, Barry S. Maram, is the Director of the Illinois Department of Healthcare and Family Services (HFS) and is being sued in his official capacity.  The HFS is the designated Medical Assistance Single State Agency and is responsible for the oversight and the administration of the Medicaid program under Title XIX of the Social Security Act, which includes programs for persons with mental retardation or developmental disabilities.

9.  The Defendant, Carol L. Adams, as Secretary of the Illinois Department of Human Services (DHS) is being sue in her official capacity.

(a)  Pursuant to an interagency agreement with HFS, Defendant Adams office (DHS) is responsible for administering Illinois' State Medicaid Plan and the monitoring of Title XIX programs.

(b) HFS has delegated the day-to-day-administration of the waiver program to DHS via an interagency provider agreement which specifies the activities performed by each of the two agencies.  Under the terms of this agreement, DHS is responsible for administering the waiver according to the rules, regulations and procedures established by the HFS.  DHS acts as

5

the fiscal agent of HFS.   DHS has in turn contracted with community-based agencies throughout

the State to provide services to individuals in the waiver.

10. The Defendant, Lilia Teninty, is the Director of the Office of Developmental

Disabilities (ODD) which is operated within DHS and she is being sue in her official capacity.

The Office of Developmental Disabilities (ODD) is responsible for the control and

administration of the developmental disabilities program  and its related Medicaid program in

Illinois.

### IV.  CLASS ACTION ALLEGATIONS

11.  Plaintiff bring this action on behalf of himself and as a class action pursuant to Rule

23(b)(2) of the Federal Rules of Civil Procedure.

12.  The Class consists of the following:

> All developmentally disabled persons who are or will be recipients of Illinois
> Medicaid program, who reside in Medicaid funded Community-Integrated
> Living Arrangement (CILA) and for whom intensive nursing care or access to 24
> hour nursing care is medically necessary, but who have not been provided funding
> for such care.

13.  The Class is so numerous that joinder of all persons is impracticable.  The class

members have limited financial resources and are unlikely to institute individual actions.

Thirteen (13) developmentally disabled adults with a medical need for intensive nursing care

services or access to 24 hour services are being served by St. Coletta's of Illinois and this group

of 13 are not receiving funding for intensive nursing care services or 24 hour nursing services.

Additionally, approximately 30 children a year with developmentally disabilities who are part of

a group who need intensive nursing care are aging out of the "childrens residential program," and

will require funding for intensive nursing care services or access to 24 hour nursing care services

6

in order to live in the community.

14. The claims of the class members raise common questions of law and fact. These include:

(a) Whether the Defendants' have utilized criteria or methods of administration that have the effect of subjecting the Plaintiff and the class to illegal discrimination under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

(b) Whether the Defendants' practice and policy is to provide funding for developmentally disabled persons under the age of 21 years or while they are enrolled in the "childrens program" to receive intensive nursing care services or access to 24 hour nursing services, when medically necessary;

(c) Whether the Defendants' practice and policy is <u>not</u> to provide funding for developmentally disabled persons over the age of 21 years or when they age out of the "childrens program" into the "adults program" to receive intensive nursing care services or access to 24 hour nursing services when medically necessary if they are living in the community.

(d) Whether the Defendants' practice and policy is to provide funding for developmentally disabled persons over the age of 21 years or when they are in the "adults program" to receive intensive nursing care services or access 24 hour nursing services when medically necessary, only if they are living in an institution and not in the community;

(e) Whether the Defendant's violated the ADA and Rehabilitation Act by not providing funding for community-based services for the Plaintiff and the class for intensive nursing care services or access to 24 hour nursing services when medically necessary;

(f) Whether a fundamental alteration of the Illinois disability programs would occur if

7

the Defendants' provided funding for community-based services for the Plaintiff and the class for

intensive nursing care services or access to 24 hour nursing services when medically necessary;

and

      (g) Whether the ADA and Rehabilitation Act permits the Defendants' to reduce the

level of services (funding) for disabled persons after the age of 21 or when they age out of the

"childrens program," even though there has been no change in their medical needs.

      The common questions of fact and law predominate over questions affecting only

individual class members.

      15. The Plaintiff's claims are typical of the class members' claims.

      16. The Plaintiff is an adequate representatives of the class because he suffers from

deprivations identical to those of the class members and has been denied the same federal rights

that he seeks to enforce on behalf of the other class members. The Plaintiff will fairly and

adequately represent the interests of the other class members, many of whom are unable to

pursue claims on their own behalf as the result of their disabilities. Plaintiff's interest in

obtaining injunctive relief for the violations of constitutional rights and privileges are consistent

with and not antagonistic to those of any person within the class. Plaintiff's counsel is qualified,

experienced and able to conduct the proposed litigation.

      17. A class action is superior to other available methods for the fair and efficient

adjudication of the controversy in that:

          (i) A multiplicity of suits with consequent burden on the courts and defendants
            should be avoided.

          (ii) It would be virtually impossible for all class members to intervene as parties-
            plaintiffs in this action.

18.  The Defendants have acted or refused to act on grounds applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## V.  STATEMENT OF FACTS

### A.  Plaintiff Keith Boney

19.  Keith Boney  is a 30 year old developmentally disabled person.  He is severely mentally retarded.  He is non ambulatory, wheel chair dependent.  He has cerebral palsy with deformity of both feet.  He has chronic asthma and is at risk for respiratory infections.  He is monitored for asthma symptom and receives routine nebulizer treatments.  He has severe spastic quadriplegia and requires assistance with all his daily living activities.  He is on a mechanical diet with chopped food and he utilizes a wheelchair.   Due to the Plaintiff's complex medical issues, he requires intensive nursing care services or access to 24 hour nursing care.

20.  The Plaintiff is a recipient of Medical Assistance, commonly known as Medicaid.

21.  Between 1996 through October, 2006, the Plaintiff was provided 24 hour nursing care services, among other services in a Child Care Institution (CCI), a "childrens program." During this time period, the Plaintiff was one of 20 persons with similar medical needs for intensive nursing services or access to 24 hour nursing care services, who received these services in the CCI operated by St. Coletta's of Illinois, Inc.  It is not uncommon for the Defendants to keep a person over the age of 21 years into the "childrens program" for some period of time past the age of 21 years.

22.  In November, 2006, the Defendants' aged the Plaintiff out of the "childrens program" and the Defendants' began to provide funding for to the Plaintiff under the "adults program"

commonly known as the Medicaid Home and Community-Based Services (HCBS) for adults with developmental disabilities or mental retardation. Since November, 2006, St. Coletta of Illinois has been providing services to the Plaintiff under the "adults program."

23. The level of funding provided to persons with developmentally disabilities who have a need for intensive nursing services or access to 24 hour nursing services in the "childrens program" appropriately addresses the medical need and costs for such services. The Defendants' arbitrarily and capriciously reduced the level of funding to the Plaintiff and similar persons with developmentally disabilities who have a medical need for intensive nursing services or 24 hour nursing services as they age out of the "childrens program" into the "adults program."

24. As the result of the Defendants' arbitrarily reducing the level of funding for the Plaintiff as he aged out of the "childrens program" into the "adults program," upon information and belief, the Defendants' are now only providing to the Plaintiff funding for 10.2 hours of nursing services per year in contrast to the access to 24 hour nursing services which he previously received in the "childrens program."

25. As the result of the Defendants' arbitrarily reducing the level of funding for the Plaintiff, St. Coletta's of Illinois has informed the Plaintiff in a letter dated, May 1, 2008, that St. Coletta's of Illinois will no longer be able to serve the Plaintiff due to the fact that the funding for the CILA program does not recognize the need for access to 24 hour nursing care for the Plaintiff. That St. Coletta's of Illinois is willing to continue to provide community based services to the Plaintiff if the Plaintiff is able to secure funding from the Defendants' which addresses the medical needs of the Plaintiff for intensive nursing care or access to 24 hour nursing services.

26.  The Plaintiff wants to be able to receive funding to address his intensive nursing needs and live in a CILA in the community.

27.  The Plaintiff does not want to leave the current community based services which he receives and live in either a nursing home or institution.  That community based services are the least restrictive and most integrated setting for the Plaintiff.

28.  That the Defendants' have refused to provide adequate funding to the Plaintiff and other putative class members as previously requested by St. Coletta's of Illinois and the Office of the State Guardian.   The Office of State Guardian, in a letter dated March 8, 2007, addressed to DHS - Division of Developmental Disabilities, stated as follows:

> We [Office of State Guardian] are asking the Division of Developmental
> Disabilities to reconsider St. Coletta's request for additional funding so that
> our wards may continue to receive community based services.  We have been
> pleased with the care provided by St. Coletta's and would like our wards to
> remain in their placements.

29.  That the failure of the Defendants to provide for community based funding for intensive nursing care or access to 24 hour nursing services to the Plaintiff will ultimately force him into an institutional setting, isolating him from the community.

**B.  The Federal/State Medical Assistance Program**

30.  Medical Assistance, commonly known as Medicaid, is a joint federal-state program in which the federal government reimburses a portion of the expenditures incurred by States to furnish health care services to people whose income and resources are insufficient to cover the costs of care.

31.  Title XIX of the Social Security Act of 1965, 42 U.S.C. Section 1396 *et. seq.* (The "Medicaid Act"), establishes Medicaid, a federal program administered by the States to provide

health care to low-income individuals.  State participation in the Medicaid program is optional.

If the State elects to participate, it must submit a "State Plan" for approval by the Secretary of the

United States Department of Health and Human Services ("HHS").

32.  The federal government reimburses a participating State for a portion of the cost of

medical services provided under its Medicaid program.  To receive federal funds, the State's

program must comply with the requirements set forth in the Medicaid Act and in federal

implementing regulations.

33.  The Medicaid Act requires participating States to provide certain services to

individuals who qualify as "categorically needy" based on their eligibility for assistance under

other federal programs.  42 U.S.C. Sections 1396a(a)(10)(A), 1396d(a); 42 C.F.R. Section 435.4.

The Act offers States the option of providing -- and receiving federal Medicaid reimbursement

for -- additional health care services for the categorically needy and for the "medically needy,"

whose income and assets are limited but are too high to qualify for "categorically needy" status.

42 U.S.C. Sections 1396a(a)(10)(C); 42 C.F.R. Section 435.4.

34.  One optional service that a participating State may provide is care for eligible

individuals in an "intermediate care facility for the mentally retarded ("ICF/MR").  42 U.S.C.

Sections 1396d(a)(15), (d).   Once a state commits to provide optional services, it must provide

them in compliance with the requirements of the Medicaid Act.

35.  (a)  The State of Illinois participates in the Medicaid program and has filed a State

Plan with the federal government.  In the State Plan, the State of Illinois has committed to

provide Medicaid services to both the categorically needy and the medically needy.

(b)  The State of Illinois Medicaid program includes ICF/MR or ICF/DD

("intermediate care facility for the developmentally disabled") services for eligible individuals. ICF/DD's provide residential, health, rehabilitative services and an active treatment program for individuals with developmental disabilities and mental retardation. The active treatment program includes habilitation, occupational therapy, speech therapy and physical therapy which is directed toward the acquisition of the behaviors for the person to function with as much self determination and independence as possible and the prevention or deceleration of regression or loss of current optimal functional status. 42 U.S.C. Sec. 1396d(d); 42 C.F.R. Sec. 483.45; 42 C.F.R. Sec. 483.400(a)(1)(i)-(ii).

### C.  State of Illinois - Medicaid Waiver Plan for Adults with Developmental Disabilities

36.  Alternatively, the State may provide — and receive federal reimbursement for -- Home and Community Based Services for the mentally retarded if the state obtains a "waiver" from the Secretary of HHS that permits the state to provide such services in place of ICF/MR care. *Id.* at Section 1396n(c)(1).  Once a state commits to provide optional services, it must provide them in compliance with the requirements of the Medicaid Act.

37.  (a)  The State of Illinois was granted approval by the Secretary of HHS to operate "Home and Community Based-Services (HCBS) for Adults with Developmental Disabilities under Section 1915(c) of the Social Security Act to operate a medicaid waiver program to provide services to individuals with mental retardation or developmental disabilities who would otherwise require an ICF/MR level of care.   The use of the terms  ICF/MR or ICF/DD are interchangeable.

(b) The State of Illinois HCBS waiver program is to provide services to individuals

13

who, but for the provision of such services, would require the level of care in an intermediate care facility for mentally retarded or persons with related conditions (ICF/MR).

(c)  Pursuant to its waiver program, the State of Illinois was granted a waiver of section 1902(a)(10)(B) of the Act to target waiver services to the select group of "mentally retarded and developmentally disabled" individuals who would be otherwise eligible for waiver services.

(d)  Pursuant to its waiver program, the State of Illinois was granted a waiver of section 1902(a)(10)(B) of the Act to impose the additional targeting restriction of limiting waiver services to persons aged eighteen and older.

(e)  Pursuant to its waiver program, the State of Illinois will not refuse to offer home and community-based services to any person for whom it can be reasonably be expected that the cost of home and community-based services furnished to that individual would exceed the cost of a level of care in an intermediate care facility for mentally retarded or persons with related conditions (ICF/MR)

(f)  Pursuant to its waiver program, the State did not request a waiver of the "statewideness" requirements set forth in section 1902(a)(1) of the Act.

(g) Pursuant to its waiver program, the State obtained a waiver of the amount, duration and scope of services requirement contained in section 1902(a)(10)(B) of the Act in order that services not otherwise available under the Illinois Medicaid State plan may be provided to individuals served on the waiver to the target group of persons who are mentally retarded and developmentally disabled and who are aged eighteen and older.

(h)  Pursuant to its waiver program, persons accepted into the State of Illinois

14

(HCBS) waiver program are entitled to receive, among other services, the following services:

> (i)   Residential Habilitation, which includes residing in a Community Integrated Living Arrangement (CILA) with up to 8 persons.

> (ii)  Day Habilitation (Developmental Training).

> (iii) Personal Support.

> (iv)  Skilled Nursing

.       (i)  Pursuant to its waiver program, the State of Illinois guarantees to mentally retarded and developmentally disabled individuals who are determined to be eligible for "waiver"services shall be given the choice of either institutional or home and community-based services.

(j) Pursuant to its waiver program, the State of Illinois guarantees that absent the waiver program, persons served in the waiver would receive the appropriate type of Medicaid-funded institutional care that they require.

38.  Waiver services are a cost effective alternative to the higher cost, less integrated institutional care in an ICF/MR or ICF/DD.

39.  Individuals who are eligible for "waiver"services are also guaranteed a choice between those services and ICF/MR or ICF/DD care by the Medicaid Act itself, 42 U.S.C. Section 1396n(c)(2)(C), and by other federal statutes and regulations.  Eligible individuals are entitled to choose home and community-based services that are more "integrated" than institutional care.

40.  The Plaintiff has chosen to receive funding for home and community based waiver services as opposed to funding for institutional services.

41.  As a participant in the federal Medicaid program and a recipient of federal funds, the State of Illinois is required to comply with the provisions of the Medicaid Act.

42.  (a) Section 1396a(a)(8) of the Medicaid Act requires that a state Medicaid program provide that medical assistance "shall be furnished with *reasonable promptness* to all eligible individuals." 42 U.S.C. Section 1396a(a)(8) (emphasis added).

(b)  A corresponding regulation provides that the responsible state agency "must," among other things, "[f]urnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures," and "[c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible." 42 C.F.R. Sec. 435.930(a)-(b) (1996).  Another regulation states that "[t]he agency must establish time standard for determining eligibility and inform the applicant of what they are." 42 C.F.R. Sec. 435.911(a) (1996).  These period are not to exceed "[n]inety days for applicants who apply for Medicaid on the basis of disability" or "[f]orty-five days for all other applicants." 42 C.F.R. Sec. 435.911(a)(1)-)(2) (1996).  Moreover, the agency "must not use the time standards" as "a waiting period." 42 C.F.R. Sec. 435.911(e)(1) 1996.

43.  Despite the Medicaid Act's clear command that eligible individuals receive funding for care and services with "reasonable promptness," the Defendants have failed to provide the funding for all the services which the Plaintiff is eligible to receive under the HCBS program, specifically funding for intensive nursing care or 24 hour nursing services.

44.  Under the laws governing the State of Illinois HCBS Waiver Plan for Adults with Developmental Disabilities, the Defendants have discretion to set funding for intensive nursing care services or 24 hour nursing care services, provided that the waiver program is cost neutral.

16

**D.  CILA's Funding Does Not Recognize For Persons Who Have Continuous Medical / Nursing Needs For Services**

45.  The Defendants' HBCS Medicaid Waiver Plan for Adults with Developmental Disabilities with respect to the funding for nursing services, states, in part as follows:

> Nursing services are considered an integral part of residential habilitation services.  *  *  *  Nursing supports are part-time and limited; 24-hour nursing supports, similar to those provided in a nursing facility (NF) or Intermediate Care Facility for individuals with Developmental Disabilities (ICF/DD), are not available to participants in the Waiver.  (Appendix C-3.3)

46.  The Defendants' HBCS Medicaid Waiver Plan for Adults with Developmental does not provide funding for intensive nursing care services or access to 24 hour nursing care.

47.  The Department of Human Services (DHS) Community-Integrated Living Arrangement (CILA) Individualized Rate Determination Model is the current model used by the Defendants to provide funding for Medicaid Benefits to the Plaintiff.

48.  (a)  DHS has published a "User Guide" on how the CILA rate determination is set. DHS acknowledges that the CILA Model Rate setting is not appropriate for persons who have continuous medical needs for nursing services.  DHS stated:

> The Department has followed a general policy that persons with predictable, stable, and noncontinuous medical needs are appropriate for CILA supports. Persons having continuous medical needs, or with medical conditions that require a nurse to be present as a preventative measure, require care in settings licensed to deliver nursing services and, therefore, may not be appropriate for CILA supports.  (User Guide at page 6)

(b)  DHS further acknowledges that the CILA Model Rate setting has "built-in funding . . .  disincentives for different conditions of support."  (User Guide at page 6)  DHS stated:

17

> By using the funding incentives and disincentives that are built into the
> CILA Model, the Department tries to influence the character of the CILA
> in the marketplace to be consistent with its policies and financial abilities.
> Promoting or discouraging certain conditions of support is the way the
> Department tries to balance individual choice and needs with Department
> policy and beliefs. (Use Guide at page 7)

49. Under the CILA Rate Model, upon information and belief, the Plaintiff receives funding for nursing services in the amount of 10.2 hours per year.

50. The Plaintiffs medical condition requires intensive nursing care or access to 24 hour nursing care services.

51. Prior to attaining the Plaintiff aging out of the "childrens program" the Plaintiff's medical condition required access to 24 hour nursing care services and the Defendants' provided funding to the Plaintiff for access to 24 hour nursing care services.

52. That the Defendants' policies and practices of denying the Plaintiff and the putative class funding for intensive nursing care services or access to 24 hour nursing services, violates the provisions of the Medicaid Act.

53. Each Defendant, acting in his official capacity, is responsible for the control, implementation and administration of the State of Illinois obligations to the mentally retarded and the developmentally disabled.

## VI.  CAUSES Of ACTION

### COUNT I

### VIOLATION OF MEDICAID ACT, 42 U.S.C. SECTION 1396a(a), AND 42 U.S.C SECTION 1983

54. The Plaintiff repeats and incorporates by reference as though fully set forth here the facts contained in paragraphs 1 through 53 above.

18

55. The Defendants, while acting under color of law, have violated and are violating Plaintiffs rights under 42 U.S.C. Section 1396(a)(8) and 42 U.S.C. Section 1983 by failing to provide funding for intensive nursing care or 24 hour nursing care services to the Plaintiff with reasonable promptness, even though the Plaintiff has a medical need for such services.

56. The Defendants' failure to provide funding for intensive nursing care or access to 24 hour nursing care services Medicaid services to the Plaintiff with "reasonable promptness" violates Plaintiff's rights conferred by the Medicaid Act, 42 U.S.C. Sec. 1396(a) and implementing regulations. Plaintiff bring this action pursuant to 42 U.S.C. Section 1983 to enforce his federal statutory and constitutional rights. The Plaintiff seeks declaratory and injunctive relief to redress Defendants violation of the Medicaid Act.

57. As a result of the acts and omissions of the Defendants, the Plaintiff will suffer and continue to suffer physical, mental and emotional deprivation, including but not limited to the aggravation of existing physical, mental and emotional conditions. The Plaintiff will continue to suffer such deprivations in the future absent relief from this Court.

## COUNT II

### VIOLATION OF AMERICAN WITH DISABILITIES ACT (ADA) AND 42 U.S.C SECTION 1983

58. The Plaintiff repeats and incorporates by reference as though fully set forth here the facts contained in paragraphs 1 through 57 above.

59. Title II of the American with Disabilities Act (ADA) provides that no qualified person with a disability shall be subjected to discrimination by a public entity. 42 U.S.C. Sec. 42 U.S.C. Sec. 12132. A public entitle shall administer services, programs, and activities in the

most integrated setting appropriate to the needs of qualified individuals with disabilities. 28

C.F.R. Sec. 35.130(d) (1998). Policies and practices that have the effects of unjustifiably

segregating persons with disabilities in institutions constitute prohibited discrimination under the

ADA.

      60. The Plaintiff is a qualified individuals with disabilities within the meaning of Title II

of the ADA.

      61. The Illinois Department of Healthcare and Family Services of which Defendant

Maram is Director is a "public entity" within the meaning of Title II of the ADA. The Illinois

Department of Human Services of which Defendant Adams is Secretary is a "public entity"

within the meaning of Title II of the ADA. The Office of Developmental Disabilities of which

Defendant Teninty is Director is a "public entity" within the meaning of Title II of the ADA.

      62. The Defendant's failure to provide to the Plaintiff funding for intensive nursing care

services or access to 24 hour nursing care services, in the most integrated setting for receipt of

those services, violates the community integration requirements of Title II of the Americans with

Disabilities Act, 42 U.S.C. Sec. 12132 and its implementing regulation 28 C.F.R. Sec. 35.130.

      63. The Defendants' HBCS Medicaid Waiver Plan for Adults with Developmental

Disabilities violates the ADA as the Plan requires the Plaintiff to receive intensive nursing care

services or access to 24 hour nursing services in an Institution as the Plan at Appendix C-3:3

provides as follows:

> Nursing services are considered an integral part of residential habilitation
> services. *  *  *  Nursing supports are part-time and limited; 24-hour
> nursing supports, similar to those provided in a nursing facility (NF) or
> Intermediate Care Facility for individuals with Developmental Disabilities
> (ICF/DD), are not available to participants in the Waiver.

The Defendants' failure to reasonably modify the Waiver Plan to provide funding for the Plaintiff to receive intensive nursing care services or access to 24 hour nursing supports in the community violates the ADA. The Defendant's failure to reasonably accommodate the medical needs of the Plaintiff to receive intensive nursing care services or access to 24 hour nursing supports in the community violates the ADA.

64. The Plaintiff will suffer irreparable injury if the Defendants' are not enjoined from failing to provide funding for intensive nursing care services or access to 24 hour nursing care services in the community, as the Plaintiff will be forced into an institution, where he will not receive the most integrated setting appropriate to his needs.

65. The Plaintiff has no adequate remedy at law.

66. The Plaintiff is indigent and unable to post bond.

## COUNT III

## VIOLATION OF REHABILITATION ACT AND 42 U.S.C SECTION 1983

67. The Plaintiff's repeat and incorporate by reference as though fully set forth here the facts contained in paragraphs 1 through 66 above.

68. The Rehabilitation Act, 29 U.S.C. Sec. 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability. The implementing regulation for the statute requires that public and federally-funded entities provide programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability." 28 C.F.R. Section 41.51(d). Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited

discrimination under the RA.

69.  The Illinois Department of Healthcare and Family Services, the Illinois Department of Human Services and the Office of Developmental Disablities are recipients of federal funds.

70.  The Plaintiff is a qualified individual with a disability under Section 504 of the Rehabilitation Act.

71.  The Defendants' HBCS Medicaid Waiver Plan for Adults with Developmental Disabilities violates the RA as the Plan requires the Plaintiff to receive intensive nursing care services or access to 24 hour nursing services in an Institution as the Plan at Appendix C-3:3 provides as follows:

> Nursing services are considered an integral part of residential habilitation services. * * * Nursing supports are part-time and limited; 24-hour nursing supports, similar to those provided in a nursing facility (NF) or Intermediate Care Facility for individuals with Developmental Disabilities (ICF/DD), are not available to participants in the Waiver.

The Defendants' failure to reasonably modify the Waiver Plan to provide funding for the Plaintiff to receive intensive nursing care services or access to 24 hour nursing supports in the community violates the RA.  The Defendant's failure to reasonably accommodate the medical needs of the Plaintiff to receive intensive nursing care services or access to 24 hour nursing supports in the community violates the RA.

72.  The Plaintiff will suffer irreparable injury if the Defendants' are not enjoined from failing to provide funding for intensive nursing care services or access to 24 hour nursing care services in the community, otherwise, the Plaintiff will be forced into an institution, where he will not receive the most integrated setting appropriate to his needs.

73.  The Defendants failure to provide funding for Medicaid services for intensive

22

nursing care or access to 24 hour nursing care services to the Plaintiff in his community, the most integrated setting appropriate to his needs, even though it will provide Medicaid funding in institutions for the Plaintiff, violates Section 504 of the Rehabilitation Act..

74.  The Plaintiff will suffer irreparable injury if the Defendants' are not enjoined from failing to provide funding for intensive nursing care services or access to 24 hour nursing care services in the community, as the Plaintiff will be forced into an institution, where he will not receive the most integrated setting appropriate to his needs.

75.  The Plaintiff has no adequate remedy at law.

76.  The Plaintiff is indigent and unable to post bond.

## VII.   REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully request that this Court:

(a)  Certify this case to proceed as a class action.

(b) Issue a Declaratory Judgment in favor of the Plaintiff and the Class and that the Defendants' acts or omissions violate Title XIX of the Social Security Act, Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

(c) Issue Preliminary and Permanent injunctive relief requiring the Defendants' to restore the level of funding for Plaintiffs' Medicaid Benefits prior to aging out of the "childrens program," at the current prevailing rate paid by the Defendants to persons who are developmentally disabled in a residential program and who have a need for access to 24 hour nursing care services and who have not attained the age of 21 years.

(d) Award Plaintiff and the Class the costs of this action, including reasonable attorneys

fees, pursuant to 42 U.S.C. Section 12205; Section 504 of the Rehabilitation Act, and 42 U.S.C. Section 1988; and

      (e) Award such other relief as the Court deems just and appropriate.

                                Respectfully submitted,

                                */s/ Robert H. Farley, Jr.*
                                Attorney for Plaintiff

Robert H. Farley, Jr.
Robert H. Farley, Jr., Ltd.
1155 S. Washington Street
Naperville, IL 60540
Phone: 630-369-0103
Fax:    630-369-019